UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT K. DECKER, No. 51719-074,<br><br>    Petitioner,<br><br>v.<br><br>DANIEL SPROUL, Warden<br><br>    Respondent. | Case No. 3:24-cv-01537-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on preliminary review of Decker's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. (Doc. 1). in which he claims he was improperly denied due process in a disciplinary hearing. The Court finds that Decker's § 2241 petition lacks merit. Accordingly, Decker's § 2241 petition, (Doc. 1), is **DENIED** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

I.      **Background**

Decker is serving an aggregated 140-month term of imprisonment, followed by a three-year term of supervision, on one count of conspiracy to distribute a mixture of a detectable amount of hydromorphone, hydrocodone, and oxycodone under 21 U.S.C. § 846, and one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h). Decker is currently being held at the United States Penitentiary in Marion, Illinois ("USP Marion"). This is one of several § 2241 petitions he has filed.

Here, on December 19, 2023, Decker was observed on camera getting into a verbal altercation with another inmate. A shoving match ensued that culminated in a physical fight. Eventually, Decker and the other inmate ended the fight and walked away. These events were witnessed by Correctional Officer Heard. She reported her observations to Correctional Officer

1

Moon who then filed an incident report.

Following the incident report, a disciplinary hearing was scheduled for January 11, 2024. Decker was assigned Officer Garnet as a representative. Decker admitted to the altercation, but characterized it as "horseplay." After reviewing the evidence, the Disciplinary Committee found that Decker had violated jail policy and, as a result, lost good conduct time as well as email and visit privileges. Decker appealed administratively twice, but those appeals were denied.

Decker challenges the finding of the disciplinary hearing on three grounds. First, that Officer Moon, who wrote the incident report, did not observe the incident or videotape herself before filing the incident report. Second, Decker argues that his Unit Disciplinary Committee (UDC) was only composed of one member, but purportedly a UDC requires at least two members. Third, that the evidence was insufficient to find him guilty of the infraction.

## II.     Legal Standard

In disciplinary hearings, prisoners have procedural due process rights, but these are not the same rights a prisoner had at trial. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a right to:

> (1) [A]dvance written notice of the charges against them at least twenty-four hours before the hearing;
> (2) the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals; and
> (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.
> [(4)] the opportunity to be heard before an impartial decision maker.

*Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994) (internal citations omitted).

The findings of the discipline hearing officer must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). A court will overturn the decision "if

no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F3d. at 1077.

When an inmate believes the BOP is computing their sentence incorrectly, they may challenge their confinement by filing a § 2241 petition. *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992); *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *United States v. Dawson*, 545 F. App'x 539, 541-42 (7th Cir. 2013). § 2241 petitions are the proper method for prisoners to challenge the loss of GCT as a result of a disciplinary hearing. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

However, a petitioner must exhaust his administrative remedies before filing a § 2241 petition. This is a common-law exhaustion requirement, not a statutory one. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may require it before it entertains a § 2241 petition. *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief"); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (same with respect to sentence computation).

### III.   Analysis

Decker included records of his administrative appeal in his petition, thus, the Court will presume that he satisfied the exhaustion requirement. While Decker has exhausted his administrative remedies, his petition fails on the merits.

First, Decker takes issue with the incident report being filled out by Officer Moon instead of Officer Heard (the correctional officer who actually reviewed the video). It makes no

difference whether the incident report was filed by the person who watched the video or made by someone who claims second-hand knowledge. What matters is what evidence was used to find Decker culpable. The UDC reviewed the video feed at the hearing. The UDC did not rely solely on secondhand testimony. Therefore, Decker's first argument is meritless.

Second, Decker argues that his UDC only had one staff member on instead of the ordinary two. The UDC reviews an initial incident report after an investigation to determine whether the inmate is culpable, not culpable, or whether the incident should be referred to a Disciplinary Hearing Officer ("DHO"). INMATE DISCIPLINE PROGRAM, § 541.7 (B.O.P. PROGRAM STATEMENT 5270.09 CN-1, Nov. 18, 2020) (hereinafter "IDP"). Decker's incident report was reviewed by a one-member UDC and then referred to a DHO. Though "[t]he UDC ordinarily consists of two or more staff," two members are not always required: "[o]ne staff member UDCs are permitted when other members are not reasonably available. Only one unit staff member is required to hold an initial review when the incident is required by policy to be referred to the DHO." IDP at § 541.7(b). Therefore, the question is whether other members of Decker's UDC were unavailable, or alternatively, whether the incident was "required by policy to be referred to the DHO." *Id.* Whether an incident is automatically referred to the DHO depends on its severity: "If [an inmate is] charged with a Greatest or High severity prohibited act . . . the UDC will automatically refer the incident report to the DHO for further review." IDP at § 541.7(a)(4).

The DHO report indicates that Decker was charged with "code 299ml220." (Doc. 1). It is clear from the DHO report that Decker was accused of violating Code 299 and Code 220 of the Inmate Discipline Program. (Doc. 1). 28 CFR §541, T1. Both Code 299 and Code 220 violations are classified as "High Severity Level Prohibited Acts." 28 CFR §541, T1. Given Decker was

4

accused of "High Severity Level Prohibited Acts"; given the UDC automatically refers those acts to a DHO; and given automatic referrals can be reviewed by a one-member UDC panel; Decker's claim that a one-member UDC panel violated his due process rights is meritless.

Third, Decker argues that the evidence was insufficient to find him culpable. Video, witness testimony, and a confession are more than sufficient to find that Decker violated prison policies. Thus, Decker's claim here is also meritless.

### IV. Conclusion

While Decker has exhausted his administrative remedies, he has failed to establish that he is entitled to relief. Therefore, the Court hereby **DENIES** Decker's § 2241 petition, (Doc. 1), and **DIRECTS** the Clerk of Court to enter judgment accordingly.

If the petitioner wishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended.  Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $605.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir.

2008). It is not necessary for the petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition.  *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**
**DATED:  October 24, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
